UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                     :

UNITED STATES OF AMERICA,       :
                                       :
                                     :   **MEMORANDUM & ORDER**
       v.                        :   20-CR-293 (WFK)
                                       :

MICHAEL WILLIAMS,           :
                                     :
                 Defendant.    :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On July 7, 2022, Defendant entered a plea of guilty to Count Five of a 20-count Superseding Indictment, charging Defendant with assault in-aid-of racketeering, in violation of New York Penal Law ("NYPL") §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(3) and 2.  Plea Agreement ¶ 1, ECF No. 235.  Pursuant to that plea agreement, Defendant also stipulated and admitted to uncharged conduct, namely attempted murder in-aid-of racketeering in violation of 18 U.S.C. § 1959(a)(5).  *See id.* ¶ 2.  Defendant stipulated to including this uncharged attempted murder in his Guidelines calculations.  *Id.*; *see also* U.S.S.G. §1B1.2(c).  The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a).  For the reasons set forth below, Defendant is hereby sentenced to 121 months of imprisonment, to be followed by three years of supervised release with special conditions.  Defendant is required to pay a mandatory special assessment of $100.00.

## I. Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang members for the instant offense. Presentence Investigation Report ("PSR") ¶ 5, ECF No. 582.  Defendant was a member of the No Love City ("NLC") set, or neighborhood-based subgroup, of Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York.  *Id.* ¶¶ 5-6.  Central to GD's tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang.  *Id.* ¶ 5.

On June 14, 2020, Defendant shot at two men standing on the street near 2516 Bedford Avenue in Brooklyn, New York.  *Id.* ¶ 10.  The Government asserts "[t]he target was a YouTube

1

personality whose primary offense was criticizing the gang and some of its music videos" online. Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 743. No one was injured in this shooting. PSR ¶ 10.

On July 24, 2020, Defendant engaged in a drive-by shooting in Prospect Park South, Brooklyn. *Id.* ¶ 12. Just after midnight, a white BMW drove down St. Paul's Place, turned off its headlights, and stopped. *Id.* Defendant and another individual exited the car and shot into a crowd of people, non-fatally but seriously wounding two individuals. *Id.* NYPD officers recovered approximately 13 shell casings and one fragmented bullet from the scene. *Id.* The Government argues this was GD retaliating for one of its members being shot. Gov't Mem. at 2. Two firearms used during this shooting were linked to other shootings, including the aforementioned June 14, 2020 shooting. *Id.* at 3.

On November 8, 2020, NYPD officers arrested Defendant for the unrelated offense of storing a loaded .40 caliber semiautomatic firearm—linked to three prior shootings, *id.* at 3—in a bodega. PSR ¶ 38. After waiving his *Miranda* rights, Defendant admitted to participating in the July 24, 2020 shooting. *Id.* On August 10, 2021, FBI agents arrested Defendant in his home without incident. *Id.* ¶ 37.[1]

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleges Defendant was a member of the Folk Nation Gangster Disciples, also known as "GD," a gang operating throughout Brooklyn, New York. ECF No. 51 ¶¶ 1, 8. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(l) and 1961(1). *Id.* ¶¶ 4-5.

---

[1] Defendant had been on pretrial supervision following his November 8, 2020 arrest. *See* Government Detention Letter ("Det. Letter") at 22, ECF No. 65.

Defendant was charged with three counts in the Superseding Indictment: Count Four charges Defendant with attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Count Five charges Defendant with assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; and Count Six charges Defendant with possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(i)-(iii). *Id.* ¶¶ 14-18. The Superseding Indictment also contains criminal forfeiture allegations as to all counts. *Id.* ¶¶ 44-45.

On July 7, 2022, Defendant entered a plea of guilty to Count Five of the Superseding Indictment. Plea Agreement ¶ 1, ECF No. 235. Pursuant to that plea agreement, Defendant also stipulated and admitted to uncharged conduct, namely attempted murder in-aid-of racketeering in violation of 18 U.S.C. § 1959(a)(5) ("Stipulated VICAR attempted murder offense").[2] *See* Plea Agreement ¶ 2. Defendant stipulated to including this uncharged attempted murder in his Guidelines calculations. *Id.*; *see also* U.S.S.G. §1B1.2(c).

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. §

---

[2] While uncharged, it appears the stipulated attempted murder was predicated on a violation of NYPL §§ 125.25(1) and 110.00. *See* Det. Letter at 22; *see also* PSR ¶ 74.

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

### III. Analysis

#### A.    The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

##### 1.        Family and Personal Background

Defendant, who goes by Mikey, was born on June 24, 2002 in Brooklyn, New York to Michael Williams Sr. and Shaunette Fuller.  PSR ¶ 76.  Defendant's parents separated when Defendant was very young.  *Id.*  Defendant's father was incarcerated when Defendant was approximately four years old, and Defendant had no contact with his father for two to three years prior to the writing of the PSR.  *Id.* ¶¶ 76, 79; *see also* Defense Counsel's Sentencing Memorandum ("Def. Mem.") at 2-3, 5, 6, ECF No. 727 (alluding to Defendant's father's criminal past).  According to defense counsel, Defendant's father's behavior once released "made clear that he had no real interest in being a father to Mikey."  Def. Mem. at 4; *see also id.* ("Mikey has a particular vulnerability, a deep pain caused by his father's rejection of him.").  Defendant is very close with his mother, PSR ¶ 79, who is aware of the instant offense and

4

remains supportive, *id.* ¶ 76. *See also* Def. Mem. at 3; Ex. A to Def. Mem., ECF No. 727-1 (letter of support from Defendant's mother); Ex. B to Def. Mem., ECF No. 727-2 (Legal Aid Society video created in support of Defendant's bail application for his state charges). Defendant has one half-sibling with whom he does not share a close relationship. PSR ¶ 77.

Defendant was raised by his mother, maternal grandmother, and maternal uncle in a middle-class household in a safe neighborhood. *Id.* ¶ 79. Defendant has no children and never been married. *Id.* ¶ 80.

### 2. Educational and Employment History

Defendant graduated from Erasmus Hall High School in Brooklyn, New York in 2020. *Id.* ¶ 87. While in high school, Defendant was an accomplished football player; in fact, colleges were reportedly scouting and recruiting him. *Id.*; *see also* Def. Mem. at 2, 3. Defendant was reportedly planning to study engineering at the City University of New York during the summer of 2021. PSR ¶ 88.

Defendant has never had a paid job. *Id.* ¶ 89.

### 3. Prior Convictions

Defendant has no prior convictions. *See* PSR ¶¶ 69-72. The Government asserts Defendant violently attacked another inmate while incarcerated for the instant offense. Gov't Mem. at 3; *see also* Ex. A to Gov't Mem., ECF No. 753-1.

### 4. Physical and Mental Health

Defendant reported no chronic or serious problems with his physical or mental health. PSR ¶¶ 84-85. He has received mental health treatment while incarcerated, but does not request further treatment. *Id.* ¶ 85.

### 5. Substance Abuse

Defendant reported no history of drug or alcohol abuse or treatment. *Id.* ¶ 86.

6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.      The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses, which involved participation in at least two different shootings. *See supra* Part I. While Defendant engaged in retaliatory violence on behalf of the gang, he twice opened fire into groups of people. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

**C.      The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Count Five of the Superseding Indictment, charging assault in-aid-of racketeering. Plea Agreement ¶ 1. Pursuant to that plea agreement, Defendant also stipulated and admitted to uncharged conduct, namely attempted murder in-aid-of racketeering, in violation of 18 U.S.C. § 1959(a)(5) ("Stipulated VICAR attempted murder offense"). *See id.* ¶

2. Defendant stipulated to including this uncharged attempted murder in his Guidelines calculations. *Id.*; *see also* U.S.S.G. §1B1.2(c).

For Count Five, Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment. 18 U.S.C. § 1959(a)(3). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years on Count Five because it is a Class C felony. If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00. 18 U.S.C. § 3571(b)(3). However, Defendant's financial profile indicates he is unable to pay a fine. PSR ¶ 93. The Court is required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A). Count Five is also subject to forfeiture allegations. *See* Superseding Indictment ¶¶ 44-45. Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in this case. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 104. Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

7

**D.      The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guideline for Count Five and the Stipulated VICAR attempted murder offense is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12.  PSR ¶¶ 40, 43; *see also* Gov't Mem. at 6-7; Def. Mem. at 2; Plea Agreement ¶ 3.  As the underlying crime for each count is attempted murder, the applicable guideline for each count is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33.  PSR ¶¶ 40, 43; *see also* Gov't Mem. at 6-7; Def. Mem. at 2; Plea Agreement ¶ 3.  Per U.S.S.G. §1B1.2(c), the Stipulated VICAR attempted murder offense is "treated as if the defendant had been convicted of additional count(s) charging those offense(s)." *See also* Plea Agreement ¶ 2 (so stipulating).

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. §3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by a certain number based on how many "units" exist across counts.  In this instance, application of the grouping rules under U.S.S.G. §3D1.2 yields two groups:  Group 1 – Count 5, and Group 2 – Stipulated VICAR attempted murder offense. *See* PSR ¶¶ 40, 43, 61; *see also* Gov't Mem. at 7; Def. Mem. at 2; Plea Agreement ¶ 3.  Pursuant to U.S.S.G. §3D1.3, each group has an adjusted offense level of 33.  Therefore, two levels are added to the total adjusted offense level pursuant to U.S.S.G. §3D1.4.  PSR ¶¶ 61, 63; *see also* Gov't Mem. at 7; Def. Mem. at 2; Plea Agreement ¶ 3.

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §§ 3E1.1.  PSR ¶¶ 66-67; *see also* Gov't Mem. at 7; Def. Mem. at 2; Plea Agreement ¶ 3.  Altogether, Defendant has a total adjusted offense level of 32.

Defendant has a criminal history score of zero, establishing a criminal history category of I.  *See* PSR ¶ 71; Gov't Mem. at 7; Def. Mem. 2-3.

Based on a criminal history category of I and a total offense level of 32, Defendant's Guideline sentencing range is between 121 and 151 months of imprisonment.  All parties agree with these Guidelines calculations, which the Court adopts.

Probation contends an upward departure may be warranted pursuant to Application Note 2 to U.S.S.G. §2A2.1 because Defendant's actions created a substantial risk of death or serious injury to more than one person.  PSR ¶ 107.  *See also* Gov't Mem. at 8; Plea Agreement ¶ 3.

The parties' recommendations as to an appropriate sentence vary.  Probation recommends:  a bottom-of-the-Guidelines sentence of 121 months of imprisonment; three years of supervised release with special conditions; and payment of the mandatory $100.00 special assessment.  Probation Recommendation at 1, ECF No. 582-1.  Probation does not recommend the Court impose a fine, as it does not appear Defendant has the ability to pay.  *Id.* at 2.  Probation recommends Defendant be excused from the mandatory drug testing provisions during supervised release.  *Id.* at 1.  Probation's sentencing recommendation is predicated on the combination of (1) the serious and violent nature of Defendant's conduct, including injuring multiple victims and his stipulated attempted murder offense, (2) the need for deterrence, (3) Defendant's youth at the time of the offenses, and (4) the need to avoid unwarranted sentencing disparities.  *Id.* at 2.

9

Defense counsel requests a below-Guidelines sentence, specifically requesting a "modest downward variance from the guidelines" in light of Defendant's "youth at the time of the crimes, the aberrational nature of his conduct, his history of achievement, his deep potential, and his powerful family and community support." Def. Mem. at 2, 7.  At sentencing, defense counsel posited a sentence of 96 months would be appropriate.  Defense counsel notes Defendant's remorse for his conduct, *id.* at 6, asserting Defendant "is unequivocal that he wants no further part of gang life and criminal activity," *id.* at 1.  *See also* Ex. M. to Def. Mem., ECF No. 727-13 (Defendant's letter to the Court).  Defense counsel particularly emphasizes Defendant was 17 and 18 years old at the time of the offenses, citing Supreme Court caselaw "recogniz[ing] that an offender's youth is a mitigating factor when determining a sentence."  Def. Mem. at 7-8; *see also id.* at 8 ("In the years that he has been detained, he has already grown (both literally and figuratively) and he will continue to mature.")  "Indeed," defense counsel states, "everything in Mr. Williams's past suggests that this behavior was aberrational and in no way indicative of the person he is."  *Id.* at 8.  Defense counsel contends Defendant's actions were "a teenager's misguided turn down a dark alley" for a short period of serious misconduct.  *Id.*  Defense counsel further highlights Defendant's deep support system who could help him upon release.  *Id.*

This Court has read and considered the letters written by Defendant's family members, friends and supporters, and Defendant himself, along with a video the Legal Aid Society submitted in connection with Defendant's state bail application.  *See* Exs. A-M to Def. Mem., ECF Nos. 727-1 – 727-13; ECF No. 728 at 2-7.  These materials describe Defendant as a loving and committed son; a talented and hardworking football player; a person deeply affected by his father's rejection; and an overall good person.  *Id.*  The Court appreciates the letter from Defendant's mother, Ex. A to Def. Mem., and has heard Defendant's apology and acceptance of

responsibility for his actions, Ex. M to Def. Mem. The Court appreciates Defendant's words and those his advocates have said on his behalf.

The Government recommends a Guidelines sentence of between 121 and 151 months of imprisonment. Gov't Mem. at 1. Such a sentence is warranted, the Government argues, in light of the "extraordinary seriousness" of the instant offense, pointing to Defendant's efforts to murder individuals, "many of whom had done nothing more than be present in rival gang territory" and Defendant's firearm possession. *Id.* at 7. The Government argues such a sentence is necessary to effectuate both general and specific deterrence, specifically noting the importance of sending the message "that those who commit such violence, rather than being valorized, will instead be held fully accountable for the harms they inflict." *Id.* at 7-8. The Government maintains this sentence accounts for the history and characteristics of this Defendant, balancing Defendant's youth with his involvement in "numerous random shootings, all with the goal of killing others, and each of which created a substantial risk to targets and bystanders." *Id.* at 8. The Government further disputes defense counsel's assertions that Defendant joined GD after Covid-19, pointing to Defendant's utilization of gang symbology in his social media activity between 2018 and March 13, 2020. *Id.* at 1-2. Indeed, the Government characterizes excerpts of Defendant's social media activity since his incarceration—including as recently as January 2024—as displaying his loyalty to GD. *Id.* at 3-6.

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not expressly drawn the Court's attention to applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.  The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court considers the Government's argument that a Guidelines sentence would "avoid unwarranted sentencing disparities with others convicted of similar conduct." Gov't Mem. at 8. The Government cites FY 2019-2023 United States Sentencing Commission data showing individuals with Defendant's offense level and criminal history category whose applicable Guideline is U.S.S.G. §2A2.1 received an average sentence of 115 months' incarceration and a median sentence of 120 months' incarceration. *Id.* (citing Judiciary Sentencing Information, United States Sentencing Commission, https://jsin.ussc.gov). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.  The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### IV. CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 121 months of imprisonment; three years of supervised release with both the standard conditions of supervised release and special conditions; and the mandatory $100.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 582, as corrected herein, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 15, 2024
Brooklyn, New York